# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JEREMY DANIEL CONERD, <br><br> Defendant. | No. 14-CR-2040-LRR <br><br> **ORDER** |

_____

## *I. INTRODUCTION*

The matters before the court are the Government's Objection ("Government's Objection") (docket no. 32) and Defendant Jeremy Daniel Conerd's Objection ("Defendant's Objection") (docket no. 38) (collectively, "Objections") to United States Chief Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 29), which recommends that the court deny Defendant's Motion to Suppress ("Motion") (docket no. 18).

## *II. RELEVANT PROCEDURAL HISTORY*

On September 10, 2014, a grand jury returned a one-count Indictment (docket no. 2) charging Defendant with possession of ammunition by a felon and unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(1) and § 922(g)(3). The Indictment also contains a forfeiture allegation. On May 11, 2015, Defendant filed the Motion. On May 18, 2015, the government filed a Resistance (docket no. 20). On May 22, 2015, Judge Scoles held a hearing on the Motion. *See* May 22, 2015 Minute Entry (docket no. 21). At the conclusion of the hearing, Defendant requested that the record be held open so that Defendant could submit additional evidence. Judge Scoles granted the request and continued the hearing. On June 2, 2015, the hearing concluded after

Defendant testified. *See* June 2, 2015 Minute Entry (docket no. 24). After the hearing, Defendant and the government submitted supplemental briefs (docket nos. 27, 28).

On June 10, 2015, Judge Scoles issued his Report and Recommendation. On June 24, 2015, the government filed the Government's Objection. On July 7, 2015, Defendant filed Defendant's Objection. The Report and Recommendation, Defendant's Objection and the Government's Objection are fully submitted and ready for decision.

### III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of Judge Scoles's Report and Recommendation de novo.

## IV. FACTUAL BACKGROUND[1]

On November 27, 2013, the Oelwein Police Department received a call from Jessica Pirtle. Pirtle reported that she had just received a call from Defendant's sister, who reported that Defendant told her that Defendant had assaulted Travis Norton and was in the process of assaulting Megan Owens. Defendant told his sister that the assaults were occurring in the basement of Defendant's house. Defendant also told his sister that he would travel to her home in Lamont, Iowa and shoot her.

Oelwein Police Officer Ted Phillips was dispatched to Defendant's house. Officer Phillips had previously been dispatched to Defendant's house for multiple incidents of domestic violence throughout the prior year, including incidents involving Megan Owens. Officer Phillips also had previously arrested Travis Norton for possession of narcotics. Officer Phillips testified that police investigators had previously informed him that they suspected Defendant possessed a firearm. Additionally, Officer Phillips believed Defendant had a closed-circuit surveillance system which monitored Defendant's front door.

Officer Phillips arrived at Defendant's house at approximately 11:30 p.m. He parked on the street, not directly in front of Defendant's house. *See* Government Exhibit 1 (docket no. 25). The dispatcher told Officer Phillips that the assault was occurring in the basement. Upon arriving, Officer Phillips walked down the sidewalk toward Defendant's house. *See* Government Exhibit 2 (docket no. 25-1). He observed light emanating from Defendant's basement window, but the main floor window was dark. Officer Phillips neither heard any sounds coming from Defendant's house, nor saw anyone

---

[1] After reviewing the hearing transcripts (docket nos. 33, 45), the court finds that Judge Scoles accurately and thoroughly set forth the relevant facts in his Report and Recommendation. *See* Report and Recommendation at 2-4. Accordingly, the court will only briefly summarize the relevant facts. Additional facts are discussed in the court's analysis of the Objections.

on the street or sidewalk around Defendant's house. Officer Phillips walked up Defendant's neighbor's driveway towards the basement window. Officer Phillips then entered Defendant's side-yard and looked through Defendant's basement window to try to determine what he was walking into before he knocked on the door and continued his welfare check. *See* Government Exhibit 3 (docket no. 25-2).

Officer Phillips testified that he was about five to six feet away from Defendant's basement window when he looked through it. Defendant testified that on November 27, 2013, a large bush covered the basement window depicted in Government's Exhibit 3, which would have made it impossible for Officer Phillips to peer through the window from five to six feet away. Defendant proffered an aerial photograph from Google Maps, which shows foliage near the basement window. *See* Defendant's Exhibit A (docket no. 26).[2] Officer Phillips testified that he had no recollection of a bush obstructing the view of Defendant's basement window.

## V. ANALYSIS

The government objects to Judge Scoles's legal conclusion that the side-yard onto which Officer Phillips stepped was curtilage of Defendant's house. Defendant objects to Judge Scoles's legal conclusion that Officer Phillips's search was reasonable under the emergency aid exception to the warrant requirement. The court will address each objection in turn.

### A. Curtilage

The government objects to Judge Scoles's finding that Officer Phillips invaded the curtilage of Defendant's home. The government points to the fact that Defendant's side-

---

[2] The court notes that Defendant's Exhibit A is low resolution and difficult to make out. Defendant's house can be observed on Lincoln Drive, immediately north of Third Avenue. There is no indication on the exhibit as to when the aerial photograph was taken. In any event, Judge Scoles found that the testimony of Officer Phillips was more credible than that of Defendant. The court sees no reason to disturb that finding.

4

yard was not enclosed by a fence and that a utility meter was installed on the wall of Defendant's house. The government argues that the absence of a fence and the presence of the utility meter convey an implied license of entry onto the side-yard and, as a result, the side-yard is not curtilage.

Curtilage is "the area immediately surrounding a dwelling house." *United States v. Dunn*, 480 U.S. 294, 300 (1987). The curtilage of a house is protected as if it were the house itself. *Oliver v. United States*, 466 U.S. 170, 180 (1984). "In assessing whether a particular area is curtilage, [courts] determine 'whether the area in question is so intimately tied to the home itself' that [courts] should extend the Fourth Amendment's protection to it." *United States v. Mathias*, 721 F.3d 952, 956 (8th Cir. 2013) (quoting *United States v. Wells*, 648 F.3d 671, 677 (8th Cir. 2011)) (internal quotations omitted). "[T]he central component of this inquiry is whether the area harbors the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Dunn*, 480 U.S. at 300 (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)). Four factors bear on whether an area is curtilage: (1) the proximity of the area in question to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. *Dunn*, 480 U.S. at 301. The *Dunn* factors "are not applied mechanically or in isolation." *United States v. Gerard*, 362 F.3d 484, 488 (8th Cir. 2004). As the Supreme Court recently explained, the Fourth Amendment's protection against government intrusion "would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window." *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013).

After reviewing the *Dunn* factors de novo, the court agrees with Judge Scoles that
5

the side-yard is curtilage. The side-yard is immediately adjacent to the wall of Defendant's house. *See* Government Exhibits 1-3. Officer Phillips entered the side-yard and came within a few feet of Defendant's home. The side-yard is closely and intimately connected to the home and deserves the same protections afforded to the home itself. *See, e.g.*, *United States v. Boyster*, 436 F.3d 986, 991 (8th Cir. 2006) (holding that curtilage is "typically comprised of land adjoining a house"); *United States v. Mooring*, 137 F.3d 595, 596 (8th Cir. 1998) (noting that even a barn's "forty to fifty yards [distance] from the farmhouse neither clearly favors nor disfavors including the barn within the farmhouse's curtilage").

Moreover, the court finds that the government's argument concerning the utility meter unconvincing. Even if the meter conveyed an implied license to enter the side-yard, "[t]he scope of a license . . . is limited not only to a particular area but also to a specific purpose." *Jardines*, 133 S.Ct. at 1416. The meter provided license for a utility worker to enter the side-yard and read the meter during business hours, not for a police officer to enter the side-yard and peer through Defendant's basement window in the middle of the night. For these reasons, the court shall overrule the Government Objection.

### B. Emergency Aid Exception

Defendant objects to Judge Scoles's finding that the so-called "emergency aid" exception applies to Officer Phillips's search of Defendant's home. Defendant argues that there was insufficient information for a reasonable officer to believe that an emergency was occurring inside Defendant's basement. In particular, Defendant cites to cases in which officers, upon arriving on the scene, relied on their observations to reasonably determine that an emergency was underway. *See Michigan v. Fisher*, 558 U.S. 45, 45-46 (2009); *Brigham City, Utah v. Stuart*, 547 U.S. 398, 401 (2006); *United States v. Selberg*, 630 F.2d 1292, 1294 (8th Cir. 1980). Defendant argues that because Officer Phillips heard no shouting or other signs of an emergency when he arrived at Defendant's house, his search

6

was unreasonable under the emergency aid exception.

The Fourth Amendment protects against "unreasonable" searches and seizures. U.S. Const. amend. IV. Its "ultimate touchstone is 'reasonableness.'" *Brigham City*, 547 U.S. at 403. Warrantless searches are per se unreasonable, and the government has the burden of overcoming that presumption of unreasonableness. *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984); *Payton v. New York*, 445 U.S. 573, 586 (1980). But a warrant is not required in certain exigent circumstances. *See Mincey v. Arizona*, 437 U.S. 385, 394 (1978). One such exigency is the "emergency aid exception," which provides that a warrant is not required when officers have "an objectively reasonable basis for believing that an occupant is . . . imminently threatened with [serious injury]." *Burke v. Sullivan*, 677 F.3d 367, 371 (8th Cir. 2012) (quoting *Ryburn v. Huff*, 132 S. Ct. 987, 990 (2012)) (alteration in original). The emergency aid exception also applies when officers have "legitimate concerns for [their own] safety." *United States v. Meidel*, 764 F.3d 844, 848 (8th Cir. 2014); *see also United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996) ("It would . . . be reasonable for . . . an officer to believe that the presence of an armed suspect inside the house presented a threat to the lives of the officers outside."). The reasonable belief standard that is applied in emergency aid cases "is a less exacting standard than probable cause." *United States v. Quezada*, 448 F.3d 1005, 1007 (8th Cir. 2006) (citing *Maryland v. Buie*, 494 U.S. 325, 336–37 (1990)). An officer must have "a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 336.

After conducting a de novo review, the court concludes that Officer Phillips's search was supported by an objectively reasonable, articulable suspicion that an occupant of Defendant's basement was threatened with imminent, serious injury and that Officer Phillips had a legitimate concern for his own safety. Officer Phillips believed that the 911 call reporting an assault in Defendant's basement was credible because he had previously

been called to Defendant's home to address domestic disputes between Defendant and Megan Owens. Officer Phillips was familiar with Defendant's home, including the possibility that Defendant had a closed-circuit surveillance system trained on the front door. Additionally, Officer Phillips had received information from investigators that Defendant possessed a firearm. When Officer Phillips arrived, he observed that the light in Defendant's basement was turned on but the lights on the floor above were turned off, consistent with the dispatcher's report that the assault was occurring in the basement. Based on this information, an objectively reasonable officer in Officer Phillips's position could conclude that an occupant of Defendant's basement was threatened with imminent injury. Officer Phillips also reasonably feared for his own safety because Defendant was reportedly armed and had a closed-circuit surveillance system trained on his front door. Given these circumstances, it was reasonable for Officer Phillips to conclude that knocking on Defendant's front door was unsafe.

The court is not convinced by Defendant's argument that Officer Phillips's search was unreasonable absent some external indicia of emergency. Defendant's argument ignores the facts that were available to Officer Phillips when he arrived at Defendant's house: Defendant may have been armed, Defendant had previous altercations with Megan Owens, the alleged assault was occurring in Defendant's basement, Defendant's basement light was on and Defendant had a surveillance system trained on his front door. These facts render Officer Phillips's search reasonable even absent external indicia of emergency. Because the court finds that Officer Phillips's search was reasonable under the emergency aid exception and not violative of Defendant's Fourth Amendment rights, the court shall overrule Defendant's Objection.

## *VI. CONCLUSION*

In light of the foregoing, the court **ORDERS**:

(1) The Government's Objection (docket no. 32) is **OVERRULED**

8

(2) Defendant's Objection (docket no. 38) is **OVERRULED**;

(3) The Report and Recommendation (docket no. 29) is **ADOPTED**; and

(4) The Motion to Suppress (docket no. 18) is **DENIED**.

**DATED** this 28th day of July, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA